No. 29,292.

The Missouri Pacific Railroad Company, *Appellee,* v. The Board of County Commissioners of the County of Atchison et al., *Appellants.*

(287 Pac. 612.)

Opinion filed May 3, 1930.

*Lawrence F. Day,* of Atchison, for the appellants.

*W. P. Waggener, J. M. Challiss, O. P. May* and *B. P. Waggener,* all of Atchison, for the appellee.

The opinion of the court was delivered by

Marshall, J.: The action is one to recover taxes paid under protest. Judgment was rendered in favor of the plaintiff on the pleadings, and the defendants appeal.

The pleadings show that in 1925 a regular bridge tax of 1.50 mills was levied on all the property in Atchison county, and for the purpose of repairing and constructing bridges that had been destroyed or rendered impassable by flood and high water, another tax of one mill, designated as an emergency tax, was levied. No question is raised concerning the 1.50 mills tax. The controversy is over the one-mill tax. The validity of that tax depends on the interpretation of section 68-1103 of the Revised Statutes, under which section the county commissioners acted. That section reads:

"That whenever it is necessary to construct or repair any bridge or culvert on any county road in any county of the state, the county engineer's estimated cost of which does not exceed $40,000, the board of commissioners of such county shall appropriate from the bridge fund a sum sufficient to meet the entire expense of said work and the board shall immediately make all contracts for labor, material and all other expense necessary for the construction or repair of such work in the manner provided in this act or shall make and let a contract for the construction or the repair thereof: *Provided,* That in any county having a population of more than 30,000 and containing two or more cities of the second class the board of county commissioners shall determine the

necessity of building or repairing any bridge or bridges; shall pass a resolution declaring that such a necessity exists and shall immediately build such bridge or bridges at a cost to be determined by the county engineer's estimate of not to exceed $50,000 per bridge and appropriate money therefor: *Provided,* The levy for such purpose shall not exceed two mills upon the assessed valuation of the county: *Provided further,* That in any such county or counties where there has been constructed prior to the passage of this act or shall be hereafter constructed any bridge or bridges which shall have been destroyed or rendered impassable or shall be hereafter destroyed or rendered impassable by flood or high water, then such board of county commissioners shall immediately thereafter repair and reconstruct such bridge or bridges; shall adopt a resolution finding and determining a necessity for such repair or reconstruction and shall at once proceed to repair or rebuild the same at a cost to be determined by the county engineer's estimate not exceeding $50,000 per bridge and shall appropriate a sufficient amount of money therefor. Such board is hereby authorized and empowered to levy and collect taxes for the purpose herein named which shall not exceed three mills upon the assessed valuation of the county, any prior limit on said levy to the contrary notwithstanding: *Provided further,* That under the provisions of this section those bridges which are situated across any stream on any county road are hereby declared to have a preference over the bridges on other roads and shall be repaired and reconstructed before any other bridges are repaired and reconstructed."

The controversy turns on the meaning of the words "in any such county or counties" contained in the third proviso. The plaintiff argues that those words restrict the power of the county commissioners to repair bridges that have been rendered impassable by flood or high water to counties having a population of more than 30,000 and containing two or more cities of the second class. The defendants argue that those words apply to all the counties mentioned in the section.

The second division of section 77-201 of the Revised Statutes reads:

"Words and phrases shall be construed according to the context and the approved usage of the language; but technical words and phrases, and such others as may have acquired a peculiar and appropriate meaning in law, shall be construed according to such peculiar and appropriate meaning."

The phrase "in any such county or counties" refers to a county or to counties previously described. The county or counties referred to may be ascertained by understanding what is meant by the use of the word "such." It is the controlling word in the phrase.

In 37 Cyc. 513 the word "such" is defined as follows:

"Such. Same, p. v.; the same as previously mentioned or specified; not other or different; of that class; of that kind; of the like kind; like, q. v.;

resembling; similar, q. v.; having the particular quality or character specified; used to represent the object indefinitely, or particularized one way or another, or one and another not there mentioned; of that kind, of the like kind."

When a word or language is used.which refers to something which preceded it the reference is to that which last·precedes it and to which it can apply.

Following these rules, it is held that the phrase "in any such county or counties" found in the third proviso refers to the county or counties described in the first proviso. The first proviso describes counties of more than. 30,000 population and containing two or more cities of the second class. Atchison county did not come within that description. That county did not have authority to levy a tax under section 68-1103 of the Revised Statutes. The one-mill tax was illegally levied and can be recovered by the plaintiff.

A question concerning interest is presented in the briefs, but is not now urged and appears to have been adjusted.

The judgment is affirmed.